**UNITED STATES of America, Plaintiff,**

v.

**George G. ELLIOTT, Stanley N. Howell, Warren S. Cochran, Cochran & Howell, a partnership, Post Cleaners, Thrifty Cleaners, Defendants.**

Civ. No. 39931.

United States District Court N. D. California, S. D.

June 7, 1962.

582

Cecil F. Poole, U. S. Atty., William J. Cooney, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

James T. Davis, San Francisco, Cal., for defendants Warren S. Cochran, Cochran & Howell, a partnership, Post Cleaners and Thrifty Cleaners.

Valentine C. Hammack, San Francisco, Cal., for defendants Stanley N. Howell, Cochran & Howell, a partnership, and Post Cleaners.

ZIRPOLI, District Judge.

This suit by the United States arises out of Concessionaire Agreements between the Bay Area Exchange, a branch of the Army and Air Force Exchange Service, and the defendant dry-cleaning firms Cochran & Howell and Post Cleaners for the operation of facilities offering dry cleaning and related services at military installations within the jurisdiction of the Exchange. Cochran & Howell and Post Cleaners are owned and operated by the individual defendants Stanley N. Howell and Warren S. Cochran.

The complaint alleges that the Concessionaire Agreements provided "that as compensation for the privilege of operating such businesses at military installations within the jurisdiction of the Bay Area Exchange, Cochran & Howell, Post Cleaners, and/or the individual defendants would remit and pay over to the Bay Area Exchange a specified portion or percentage of their gross receipts." The complaint then alleges the falsification of accounts of gross receipts and the failure to remit the agreed portion to the Exchange in the following language: "defendants Howell and Cochran knowingly and willfully concealed and failed to report substantial amounts of the gross receipts of the aforesaid concessions and fraudulently and corruptly directed and instructed certain of their employees to conceal and fail to report substantial amounts of such receipts to the Bay Area Exchange. In furtherance of the aforesaid scheme, defendants Howell and Cochran knowingly and willfully submitted false statements of receipts, cash register tapes, and reports of the same, to the Bay Area Exchange, thereby fraudulently and corruptly causing the Bay Area Exchange to determine that a lesser sum in commissions was payable by the said defendants than the sum in commissions which was due and owing to the Bay Area Exchange by reason of the actual receipts of the defendants' concessions. As a further part of the aforesaid scheme, certain of the receipts received by the defendants were paid in the first instance to Thrifty Cleaners (a third cleaning establishment owned and operated by defendants Howell and Cochran) for work performed by Post Cleaners and Cochran & Howell. All of such receipts were remitted by or through Thrifty Cleaners to Post Cleaners, Cochran & Howell and/or Stanley Howell, and were fraudulently concealed from the Bay Area Exchange. The defendants wrongfully failed to remit any portion thereof to the Bay Area Exchange as commissions."

The first count of the complaint charges that the acts of defendants in submitting false accounts of their gross receipts and failing to remit the specified portion to the Exchange constituted the making or causing to be made of false, fictitious or fraudulent claims upon or against the United States in violation of the False Claims Act, Revised Statutes §§ 3490 and 5438, 31 U.S.C.A. §§ 231, 233. Double damages and penalties in the amount of

$2,000 for each false claim or report, as authorized by the Act, are demanded of the defendants Cochran, Howell, Cochran & Howell, Post Cleaners, and Thrifty Cleaners.

Count two of the complaint seeks recovery of the allegedly unpaid commissions by means of a claim for moneys had and received by the defendants allegedly belonging to the plaintiff.

Count three charges a conspiracy between the defendants Howell and Cochran and the Manager of the Bay Area Exchange, defendant Elliott, to make false claims upon or against the United States in violation of the False Claims Act. This count repeats the allegations concerning the acts of Howell and Cochran in falsifying the amount of the gross receipts and failing to remit the proper portion to the Exchange. In addition, it alleges that they entered into a conspiracy with Elliott, whereby Elliott "would countenance and allow various breaches of the Concessionaire Agreements and the applicable regulations by defendants Cochran and Howell and would fail to disclose to the proper authorities the deliberate practice of Cochran and Howell of concealing the true amounts of receipts of their concessions and thereby paying less than the actual amount of commissions due the Bay Area Exchange." It also alleges that "As a part of the aforesaid conspiracy and scheme, defendants Cochran and Howell, and Cochran & Howell, gave and remitted to defendant Elliott from time to time sums of money and other valuable gratuities in consideration of and compensation for the aforesaid improper and wrongful acts by Elliott in their behalf." Double damages and the penalties provided by the False Claims Act are demanded of the alleged conspirators.

Count four of the complaint seeks recovery of the bribes alleged to have been paid to defendant Elliott by defendants Cochran and Howell in furtherance of the conspiracy alleged in count three.

Defendants have moved for dismissal of all four counts of the complaint. Dismissal of counts one and three, which charge violations of the False Claims Act, is sought on the ground that the complaint fails to allege facts showing a violation of the Act. The False Claims Act provides in pertinent part as follows:

"Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

■ Defendants contend that their alleged acts in submitting false accounts of their gross receipts and failing to remit the proper portion as commissions do not constitute the making of a "claim" within the meaning of the False Claims Act. They further contend that even if such acts did constitute the making of a claim, it could not have been upon or against the United States because the

Army and Air Force Exchange Service is not the Government of the United States or any department or officer thereof.

In the opinion of the Court, defendants are correct in their assertion that their alleged acts in submitting false accounts of gross receipts and failing to remit the agreed portion as commissions did not constitute the filing of a "claim" within the meaning of the False Claims Act. In interpreting the Act in United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926), the Supreme Court stated that "the provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant." While this statement was perhaps broader than necessary for the decision in that case, it constitutes a specific interpretation of the Act by the Supreme Court which has never been disaffirmed. This interpretation was adopted by the Court of Appeals for the Second Circuit in its decision in United States ex rel. Kessler v. Mercur Corporation, 83 F.2d 178 (1936), wherein it approved the dismissal of a complaint under the False Claims Act alleging facts closely parallel to those in the present case. In Mercur, the defendant had leased an Army Supply Base from the Government under an agreement by which it was to compensate the Government by expending 95% of its net receipts from operation of the Base as a warehouse upon improvements to the Base. The complaint alleged that defendant submitted false accounts and reports of its receipts for the purpose of establishing its right to the receipts as against the Government.

The United States cites the case of Smith v. United States, 287 F.2d 299 (5 Cir. 1961) as supporting its position that the false reporting of receipts under an agreement by which the Government is to receive a portion as commissions constitutes a "claim" within the meaning of the False Claims Act. But, the facts in the Smith case were materially differ-

ent from those in the present case. In that case a municipal housing authority leased a housing project from the United States under an agreement by which it was to remit to the Government as rent the excess of its revenues over its operating expenses, and the Government was obligated to advance to it such funds as might be necessary to cover anticipated deficits if revenues were insufficient to defray expenses. The defendant Smith, the Manager of the municipal housing authority, furnished supplies to the authority and submitted a false account. As a result, he personally received an excessive payment for supplies, the expense for which was ultimately borne by the United States. The Court noted in its opinion that "The false claim resulted, as Smith knew it would, in the actual payment of Federal funds." Under the facts alleged in the present case, there could not have been any payment of Federal funds as the result of the false reports allegedly submitted by defendants.

The Court is satisfied that the complaint does not state facts which could constitute the making of a "claim" within the meaning of the False Claims Act, and that counts one and three must be dismissed. It is, therefore, unnecessary to consider defendants' alternative contention that if a "claim" was made, it was not upon or against the Government or any department or officer thereof.

Defendants seek dismissal of the second and fourth counts of the complaint upon the ground that they fail to state claims upon which relief can be granted. Count two, which is framed in the form of a claim for money had and received, contains the conclusionary allegation that the defendants received moneys belonging to the United States. But the complaint does not allege any facts showing that the United States had any proprietary interest in defendants' receipts from their concessions, nor does it allege facts showing that the concession revenues were received by defendants in trust for the United States. Indeed, the complaint describes the portion of the receipts which the conces-

sionaire agreements obligated defendants to pay to the Bay Area Exchange as "compensation" and as "commissions" for the privilege of operating the concessions. An action for money had and received is predicated upon the theory that the defendant has received money which in fact belongs to the plaintiff, and as to the ownership of which the defendant never at any time had any interest. Mc-Cormick-Ormand Company v. Nofziger Bros. Lumber Co., 10 Cal.App. 241, 101 P. 688 (1909). The complaint does not allege facts supporting a claim for money had and received.

 The fourth count of the complaint, which seeks recovery of bribes allegedly paid by defendants Cochran and Howell to defendant Elliott, clearly fails to state a claim upon which relief can be granted to the United States. No facts are alleged to show that any of the money paid as bribes belonged to the United States. Assuming that defendants Cochran and Howell paid a bribe to a Government agent, they would not thereby become indebted to the United States for the amount of the bribe. No statute is cited which provides for the forfeiture to the United States of moneys received as a bribe by a Government agent.

Defendants' motion to dismiss all four counts of the complaint is granted. Present Judgment of Dismissal accordingly.